

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

APEX SYSTEMS, LLC,

     Plaintiff,

v.                                 Civil Action No. 3:21cv165

BEACON HILL STAFFING GROUP, LLC,
et al.,

     Defendants.


## MEMORANDUM OPINION

This matter is before the Court on DEFENDANT BEACON HILL STAFFING GROUP, LLC'S MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT (ECF No. 40) ("Beacon Hill's Motion") and DEFENDANTS MERRIAM AND SCOTT'S MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT (ECF No. 42) ("Merriam and Scott's Motion).

Finding that the Court has subject matter jurisdiction under 28 U.S.C. § 1332, and that Apex's Complaint states claims upon which relief can be granted, the Court will deny Beacon Hill's Motion and Merriam and Scott's Motion.

## SUMMARY OF DISPUTE

This case is about a dispute over the hiring practices of Beacon Hill Staffing Group, LLC ("Beacon Hill"). Apex Systems, LLC ("Apex") alleges that Beacon Hill tortiously interfered with

its employment contracts by inducing its employees to accept jobs with Beacon Hill that breached legitimate restrictive covenants. Beacon Hill moved to have the case dismissed for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Beacon Hill argues in support of its motion under Fed. R. Civ. P. 12(b)(2) that it is not subject to general personal jurisdiction in Virginia.  It argues also that it is not subject to specific personal jurisdiction in Virginia for this case. Though Beacon Hill has two offices in Virginia, it argues that the activities carried out by those offices are not related to this case and that none of the events relevant to Apex's complaint took place in Virginia.

Beacon Hill argues in support of its motion under Fed. R. Civ. P. 12(b)(6) that the noncompete agreements Apex's former employees signed were unenforceable, that Beacon Hill did not actually impermissibly interfere with Apex's employment relations, and that Apex cannot make an adequate showing of damages to state a claim.

Merriam and Scott, the former Apex employees whose alleged poaching instigated this case, filed a joint motion to dismiss Apex's claims against them pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).  They argue in support of their motion under Fed. R. Civ. P. 12(b)(1) that this dispute is governed

by an arbitration clause in their Apex employment contracts and that the Court thus has no jurisdiction over their dispute.  They conclude that they cannot be required to litigate Apex's claims. They argue in support of their motion under Fed. R. Civ. P. 12(b)(6) that Apex does not adequately allege the elements of a breach of contract.  The arbitration issue requires separate treatment, but Merriam and Scott's other arguments exactly parallel the arguments made by Beacon Hill in its briefing, and so fail for the same reasons.

## FACTUAL BACKGROUND

Apex and Beacon Hill are staffing companies.  They assist businesses in need of employees by helping them find suitable job candidates.  The parties dispute the degree to which trade secrets are at issue in this case, but Apex alleges that its business involves extensive reliance on non-public information gleaned over many years of conducting business in this field.  ECF No. 1 at 12. Many contentions that Apex makes depend on the premise that there is sensitive information or industry knowledge at stake.

Apex charges Beacon Hill with having a "poach first, ask forgiveness later" hiring strategy.  ECF No. 1 at 1.  The principal allegation is that Beacon Hill recruited and hired Apex employees "knowing that they were bound by valid and enforceable restrictive covenant agreements."  Id. at 5.  This action was filed against Beacon Hill and two individuals who were formerly employed by Apex

but now are employed by Beacon Hill (Scott and Merriam). Each employee's contract had what Apex alleges to be a valid restrictive covenant that does not allow the employee to be employed (1) to do the same kind of work (2) for a competitor within 50 miles (3) within the 18-month period immediately following the end of their employment with Apex. ECF No. 1-1. The contracts included further restrictions on the employee's ability to recruit Apex employees for jobs at other companies.

In its briefing on the issue of injunctive relief, Apex goes into further detail about what it regards as a pattern in Beacon Hill's behavior of which the events at issue in this case are alleged to be an instance. Apex claims that its restrictive covenants are reasonable and permissible because it often recruits and hires employees who have no relevant background or experience and who must be trained to do their jobs from scratch, allowing Apex to promote home-grown talent from within rather than recruiting lateral hires who have been trained elsewhere. ECF No. 77 at 3. Apex further claims that Beacon Hill employs a kind of predatory strategy: aggressively recruiting top performers from rival companies, and, in doing so, ignoring the valid restrictive covenants applicable to those performers. ECF No. 77 at 1. Apex alleges that, as part of this strategy, Beacon Hill offers prospective employees assurance that they will be protected by Beacon Hill in the event of litigation by offering them

4

representation in any legal dispute that might arise over alleged breaches of noncompete provisions in their previous employment contracts. ECF No. 77 at 4; see also ECF Nos. 77-10 and 77-11. When--if ever--these cases are litigated, Apex claims that Beacon Hill then further implements a strategy of dilatory motions practice that hinders competitors from enforcing valid restrictive covenants.[1] In this case, for example, if Apex were to succeed in obtaining an injunction, it would run for only a fraction of the total duration of the restrictive covenants in Merriam's and Scott's contracts before the 18 months would have elapsed.

Merriam was formerly employed at Apex's northern Virginia office in Falls Church, Virginia. She had worked there for 23 months before she resigned. ECF No. 41-2 at 1. She was persuaded to leave her job at Apex and to accept a job with Beacon Hill's Washington, D.C. office. Merriam was and is a resident of the District of Columbia. Since joining Beacon Hill's Washington

---

[1] Apex alleges some other practices that, while not in themselves actionable, fill out their characterization of Beacon Hill's methods. Apex claims, for example, that it has reason to believe that Beacon Hill instructs the poached employees not to inform their previous employers that they are going to work for Beacon Hill, and to refrain from updating their LinkedIn profiles and other such online pages so that past employers cannot learn that they have gone to work for Beacon Hill. ECF No. 1 at 6. This, of course, would (if true) further contribute to Beacon Hill's strategy of running out the clock in these kinds of disputes, since any noncompete agreements are likely limited to a maximum term of about 24 months. Both Merriam and Scott are alleged to have quit without advance notice and without informing Apex that they had gone to work for Beacon Hill. ECF No. 77 at 8-9, 13.

office, however, Merriam has conducted a substantial amount of business-related activity in Virginia. Merriam has had a number of contacts with companies that are also Apex clients. Beacon Hill argues that, because those clients were already clients of Beacon Hill's before Merriam left Apex, Merriam's contacts with them do not constitute improper conduct. ECF No. 86 at 6

Scott was formerly employed at Apex's Tampa office. She was persuaded to leave her job at Apex and to accept a job with Beacon Hill's Tampa office. Scott was and is a resident of Tampa, Florida.

Both Scott's and Merriam's contracts included forum selection clauses providing that any disputes about the employment relationship governed by the contract are to be resolved by the United States District Court in the Eastern District of Virginia. Their contracts also contain an arbitration clause stating that disputes for non-injunctive relief must be presented through arbitration rather than litigation. ECF No. 1-1. The arbitration clauses include an exception, however, for a party to seek injunctive relief. The parties dispute whether that exception applies to this case.

**DISCUSSION**

## I.   Subject Matter Jurisdiction

On its own initiative, the Court ordered Apex to show cause that this case falls within the Court's diversity jurisdiction

6

under 28 U.S.C. § 1332.   ECF No. 93.   Apex's Complaint states that for each defendant it has claims for damages "no less than $75,000."   While the Complaint also states that the total amount in controversy exceeds $75,000, to meet the requirements of § 1332 a plaintiff must show that for at least one defendant the amount in controversy is greater than $75,000 before other claims can be included.   The Court therefore required Apex to show that its Complaint stated a claim for relief exceeding $75,000 against at least one of the three defendants.[2]

Neither Beacon Hill, Merriam, nor Scott asserted the absence of subject matter jurisdiction.   Apex's response to the show-cause order (ECF No. 94) satisfies the Court that, taking into account the claims for attorney fees, punitive damages, and injunctive relief, it has subject matter jurisdiction in this action.

## II.   Personal Jurisdiction

The parties agree that, because they have engaged in jurisdictional discovery, the Court must find by a preponderance

---

[2] See, e.g., Freeland v. Liberty Mutual Fire Ins. Co., 632 F.3d 250, 250 (6th Cir. 2011) ("Despite the resources that have been invested in litigating this action, we must dismiss it . . . because the amount in controversy is one penny short of our jurisdictional minimum."); Exxon Mobile Corp. v. Allapattah Servs., 545 U.S. 546, 553 (2005) (stating that it is "a bedrock principle" that a federal court "[has] no jurisdiction without statutory authorization"); Arbaugh v. Y&H Corp., 546 U.S. 500, 514 ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety.").

of the evidence that it has jurisdiction over Beacon Hill.  Beacon Hill has entered a special appearance challenging personal jurisdiction, but Merriam and Scott have not contested the applicability of their contracts' forum selection clauses, nor has any party contested venue under 28 U.S.C. § 1391.

To establish that there is specific personal jurisdiction over Beacon Hill, Apex must show that the case falls within Virginia's long-arm statute and that subjecting Beacon Hill to suit in Virginia comports with due process.  Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009).  A due process analysis requires proof that Beacon Hill "purposefully directed" activities at residents of Virginia and that Beacon Hill's contacts with Virginia are suitably related to the events at issue in this litigation.  561 F.3d at 277 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).  To meet those requirements, Apex must show that requiring Beacon Hill to defend itself in this forum comports with the standards of "fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945).  For reasons set forth below, the Court finds that each of these requirements has been met.

**A. Beacon Hill's Argument**

Apex's jurisdictional statement in its Complaint is sparse. It says that "[t]his Court has personal jurisdiction over Beacon Hill under Fed. R. Civ. P. 4(k) and Va. Code § 8.01-328.1 because

8

Beacon Hill maintains at least two offices and regularly transacts business in the Commonwealth of Virginia." ECF No. 1 at 4. Apex is presumably referring to subsection 4(k)(1)(A), which gives a court jurisdiction over a party when it is subject to jurisdiction in the state in which the court is located. The Virginia statute Apex cites gives a court jurisdiction over a person "as to a cause of action arising from . . ." various circumstances.

Thus, the statutory basis Apex points to for jurisdiction apparently grants only specific personal jurisdiction ("as to a cause of action"). It is, therefore, confusing that Apex makes only a cursory gesture at the fact that Beacon Hill operates offices in Virginia, with no mention of how those contacts relate to this case--as though Apex intended to argue for general personal jurisdiction. Beacon Hill correctly argues that it is not subject to general personal jurisdiction in Virginia in light of the decisions of the United States Supreme Court in Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915 (2011), and Daimler AG v. Bauman, 571 U.S. 117 (2014). In any event, in its reply brief, Apex does not offer any argument for the Court's having general personal jurisdiction over Beacon Hill, shifting instead to arguing for specific personal jurisdiction. Hence, it is not necessary further to consider general in personam jurisdiction.

Beacon Hill also argues that it is not subject to specific personal jurisdiction in this case. This argument hangs on a few

separate factual points that Beacon Hill treats as determinative. First, Scott and Merriam are both employed at Beacon Hill offices outside the state (Florida and Washington, D.C., respectively). ECF No. 41 at 6. Second, though Beacon Hill acknowledges that it conducts operations in Virginia, it argues that its contacts are not sufficiently related to the events presented in the Complaint to support a finding of specific personal jurisdiction. Id. at 7. Third, Beacon Hill argues that Apex's claim does not satisfy the requirements of the Virginia long-arm statute.

Beacon Hill rather confusingly divides its remaining argument into a section on due process, id. at 7, and a section on the standard of "fair play and substantial justice," id. at 8. Because that language, taken from Int'l Shoe, was intended by the Supreme Court to explain what is required by due process, and not some separate requirement for jurisdiction, Beacon Hill's argument here is a bit confused. In essence, however, it repeats the point already argued: that Beacon Hill's contacts in Virginia are not, so it claims, related to this case in a way that would allow the Court to exercise personal jurisdiction over the company.

**B. Assessment of Beacon Hill's Argument**

### 1. Virginia's Long-Arm Statute

Beacon Hill's argument on this point is perfunctory and incomplete. Beacon Hill points to subsection (A)(1) in Virginia's long-arm statute, Va. Code § 8.01-328.1, which confers

jurisdiction over a person "as to a cause of action arising from the person's (1) Transacting any business in this Commonwealth . . . ." Beacon Hill argues that this case is not about any business that it transacted in Virginia because Merriam accepted a job at a Washington, D.C. office and Scott accepted a job at a Tampa office. A separate declaration submitted by the Beacon Hill employee who recruited Merriam states that none of the events related to the recruitment took place while either party was in Virginia. ECF No. 41-1. Thus, Beacon Hill concludes, this case has nothing to do with Virginia. But that argument is too clever by half.

Apex responds that the cause of action _does_ partially arise out of business conducted in Virginia because Merriam has worked with Beacon Hill clients in northern Virginia as a part of her role in Beacon Hill's Washington office. That work, Apex says, relates directly to Apex's tortious interference claim because the work is being done in breach of the restrictive covenants in Merriam's Apex employment contract.

Beacon Hill's response to this point, which is repeated at several places in the memoranda submitted with the motions to dismiss, is that the clients and potential clients in Virginia with which Merriam had contact were Beacon Hill clients before Merriam resigned from Apex. _E.g._, ECF No. 63 at 5.

That claim, if true, might affect the merits of the tortious interference claim or the damage award if the claim were successful. But Beacon Hill does not explain, nor is it readily apparent, why that fact would affect the jurisdictional aspect of Apex's claim. The contractual clause at issue in this case restricts Merriam's employments with competitors in particular areas--it is not relevant to the basic issue of breach of contractual terms and tortious interference with contract whether the way in which Merriam broke the terms of the contract was by attempting to lure her old clients from Apex or to engage in competing business with clients who were not previously Apex clients but who are potential Apex clients. What the contractual terms most broadly prohibit is the basic activity of working for a competitor in a similar capacity within the designated geographic area.

Put more simply, if Merriam, after taking a position at Beacon Hill, began working with some client in northern Virginia, that work appears to be in breach of the noncompete agreement in Merriam's Apex contract whether or not the client is a client of Apex's and whether or not Beacon Hill had that client as a client before Merriam joined. See Apex's CONFIDENTIALITY, NONCOMPETITION, NONSOLICITATION, AND NONDISCLOSURE AGREEMENT (ECF No. 1-1 at 2):

> "Competing Business" means any person, business or subdivision of a business which provides products or services that are the same as or substantially similar to, and competitive with, the Business of the Company . . . "Competing Position" means a position held by the Employee with a Competing Business that involves duties within the Restricted Territory that are the same as or substantially similar to the duties the Employee performed for the Company . . . .

There is, then, little doubt that the events at issue in this case, as alleged in the Complaint and as presented by the record so far, satisfy subsection (1) of Virginia's long-arm statute.

As importantly, Beacon Hill ignores the two other subsections of the long-arm statute that apply here if Apex's allegations are treated as true:

> (3) Causing tortious injury by an act or omission in this Commonwealth;

> (4) Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if [the party] regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth.

Beacon Hill states in its answer that "Plaintiff asserts that this Court has person jurisdiction over Beacon Hill pursuant [to] . . . § 8.01-328(A)(1)." ECF No. 41 at 6. But this is imprecise. Paragraph 11 of the complaint says only that:

> "This Court has personal jurisdiction over Beacon Hill under Fed. R. Civ. P. 4(k) and Va. Code § 8.01-328.1 because Beacon Hill maintains at least two offices and regularly transacts business in the Commonwealth of Virginia."

ECF No. 1 at 4. Because Apex does not specify which subsection of the statute it takes to apply to this case, the Complaint does not

rest solely on the claim that this case satisfies the subsection that Beacon Hill mentions. And it is clear that Apex's alleged facts and the materials that subsequently emerged from jurisdictional discovery satisfy the requirements of subsection (4).[3]

The elements in subsection (4) are that the event: (i) causes tortious injury; (ii) in Virginia; (iii) by an act or omission outside Virginia; (iv) by a party that regularly does business in Virginia.

Element (i) is satisfied and is straightforwardly alleged in the Complaint because the cause of actious is tortious interference with contract. Element (ii) is satisfied and is impliedly alleged because Apex alleges an injury both to its northern Virginia office (where Merriam worked) and its business as a whole (which is headquartered in Virginia). Element (iii) is satisfied and is alleged because Apex claims that Beacon Hill's improper conduct involved poaching Apex employees to work in Beacon Hill offices in Florida and the District of Columbia. Element (iv) is satisfied and is alleged because Beacon Hill has multiple offices in Virginia. And each element finds adequate support in the record on the jurisdictional motion.

---

[3] It may also satisfy subsection (3), but if so, it would probably be for the same reason that it also satisfied subsection (1), so that is not an alternative way for Apex to prevail on this point.

In sum, Beacon Hill's statutory argument addresses only one section of the Virginia long-arm statute, failing even to show that that section does not apply, and it ignores the section that most clearly applies to this case. Because jurisdiction under a state statute is a prerequisite to jurisdiction under Rule 4(k), this is a significant oversight on Beacon Hill's part. Because Apex satisfies the requirements for personal jurisdiction under subsection (4), Beacon Hill is left only to argue that the exercise of such jurisdiction would offend its due process rights, irrespective of whether or not its arguments as to the other section of the Virginia long-arm statute is successful.

## 2. Due Process Analysis

The due process analysis looks to whether Beacon Hill purposefully directed its actions at Virginia, whether its contacts with Virginia are related to this suit, and whether subjecting Beacon Hill to suit comports with fair play and substantial justice. This determination is made on the basis of the "totality of facts," Universal Leather, LLC v. Koro AR, 773 F.3d 553, 561 (4th Cir. 2014), and is not a mechanical test, looking instead to whether a defendant "should reasonably anticipate being haled into court" in the relevant forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985).

The factors for assessing personal availment in the business context "include whether the defendant maintains offices or agents

in the forum state; owns property in the forum state; reached into the forum state to solicit or hail business; deliberately engaged in significant long-term business activities in the forum state; or made in-person contact with the resident of the forum in the forum state regarding the business relationship." Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 189 (4th Cir. 2016) (internal quotation marks and citation omitted). In Beacon Hill's case, many of these factors are clearly satisfied: Beacon Hill maintains offices in Virginia; it has, in connection with this case, reached into Virginia to solicit or hail business; and its offices in the state and in the District of Columbia engage in long-term business activities in Virginia.

Beacon Hill argues that exercising specific personal jurisdiction over it in this case would violate the standard of "fair play and substantial justice" as developed in Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408 (1984), and Burger King. But the application of that standard to this case is at best quite impressionistic:

> Beacon Hill is accused of hiring a resident of Washington, D.C. and a resident of Florida to perform services for Beacon Hill at its Washington, D.C. office and its Tampa, Florida office . . . Beacon Hill is a company organized and existing under Massachusetts law and headquartered in Massachusetts. The only connection between this dispute and Virginia is Apex's speculation that Merriam has been calling on, servicing, and contacting her former Apex clients since joining Beacon Hill. That speculation was answered by evidence in the form of the Declaration Merriam filed with this Court.

16

ECF No. 41 at 8. This argument is undercut by the fact that Merriam later issued a correction (ECF No. 49) clarifying that she had participated in one call with one of the listed former clients, though the parties dispute the significance of that call. More importantly, as discussed above, Apex's cause of action does not depend on Merriam's having targeted current or former Apex customers--Merriam appears to be in breach of the noncompete provisions of her contract if she is engaging with any customers within the 50-mile radius specified by the contract. And by that standard, Beacon Hill's and Merriam's contacts with Virginia are quite voluminous. As Apex observes in its opposition brief to Beacon Hill's Motion, depending on how one counted, Merriam has had anywhere from dozens to thousands of business contacts with individuals and entities located in Virginia. ECF No. 55 at 6.

More significantly, the very reason why Beacon Hill can protest that Merriam was hired "to perform services for Beacon Hill at its Washington, D.C. office" is that she was hired away (tortiously so, Apex alleges) from her work at Apex's Virginia office. The suit concerns events that led to Merriam's leaving the Virginia office to join Beacon Hill's Washington Office, i.e., events that were in part targeted at Virginia and the effects of which were felt in Virginia (Apex's loss of an employee and alleged competitive harms in Apex's work with Virginia clients). This point stands alongside the fact that Merriam's employment with

Beacon Hill's Washington office is, Apex alleges, a continuing breach of the noncompete provision in her Apex contract. That contract governed employment at a Virginia office of a Virginia company and restricted competition with businesses in the relevant area of Virginia. Far from being a case where Beacon Hill "should not have anticipated being sued" in Virginia, it ought to have been readily apparent to Beacon Hill that it was running precisely such a risk when, according to the Complaint, it encouraged Merriam to breach the restrictive covenants in her employment agreement and to work for Beacon Hill's Washington, D.C. office.

In short, Beacon Hill's effort to portray the events at issue in this litigation as unrelated to Virginia is simply not plausible. It is no wonder that Beacon Hill alleges a lack of connections with Virginia when its characterization of the events at issue omits all of the events that occurred in or were targeted at Virginia. A more careful examination of the record shows that Beacon Hill's characterization of the events is incomplete. <u>Burger King</u> instructs that jurisdiction is inappropriate where a defendant's contacts are "random, fortuitous, or attenuated." 471 U.S. at 472. But that is hardly the case here. If Apex's claims are correct, each day that Merriam had contacts with Virginia companies in her position at Beacon Hill continues the breach of her Apex contract--a breach triggered by actions taken in Virginia, targeted at Virginia, and the effects of which are felt in

Virginia.   Whether Merriam <u>is</u> actually in breach of her contract and whether the contractual noncompete provision is legitimate under Virginia law are questions undecided on their merits; but that does not preclude the exercise of specific personal jurisdiction over Beacon Hill so that those questions may be decided on their merits.

Beacon Hill makes some reference to <u>Walden v. Fiore</u>, 571 U.S. 277 (2014), apparently trying to argue that this case more closely resembles the facts of that case than the facts of <u>Calder v. Jones</u>, 465 U.S. 783 (1984), the other prominent Supreme Court precedent governing specific personal jurisdiction over defendants whose actions in whole or in part occurred outside the forum state.   Both cases present the question whether a court has jurisdiction over a defendant who was not present in the forum when committing the actions at issue in the suit.   The cause of action in <u>Calder</u> was a tort suit by a California resident for the publication of allegedly libelous materials in a national magazine written and published in Florida "with a large circulation in California." 465 U.S. at 784.   At issue in <u>Walden</u> was a federal agent's allegedly improper seizure of the plaintiff's gambling winnings at an airport, followed by the agent's drafting a dishonest affidavit in support of the forfeiture.   571 U.S. at 278-79.

Reconciling these cases makes clear why jurisdiction over Beacon Hill is appropriate in this case.   In <u>Walden</u>, the Supreme

Court emphasized that a plaintiff's ties to a forum are not in themselves sufficient to establish jurisdiction over the defendant in that forum. The plaintiff needed also to be able to show that in some way the defendant had targeted the forum. Id. at 287-89. While the Supreme Court did not dispute the plaintiff's characterization of the situation as being such that the effects of the defendant's actions were felt in Nevada, the Supreme Court pointed out that, had the plaintiffs relocated to a different state, the defendant's actions would have been the same yet the effects would have been felt in that state rather than in Nevada. Id. at 289. On that record, then, the defendant's conduct did not actually target Nevada.

In Calder, by contrast, the publication of the material at issue was specifically targeted at the forum in which the publication was circulated. 465 U.S. at 287 ("[B]ecause publication to third persons is a necessary element of libel . . . the defendants' intentional tort actually occurred in California.").

The case for Virginia jurisdiction here is comparably strong to the case for jurisdiction in Calder: Merriam was hired away from a Virginia office, was hired into an office within the geographic scope of the noncompete term in her contract, and so was hired into a job the duties of which necessarily conflicted with the terms of her Apex contract. In Walden, had the plaintiffs

20

moved to a different state, the cause of action would have remained the same, but the injury would have been felt in a different place. In this case, as in Calder, the defendant's actions are what cause the alleged injury to occur in a certain place (in Calder, the place of publication; here, the office's location within the noncompete zone). There is little doubt that Virginia is "the focal point of the tortious activity." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 398 n. 7 (4th Cir. 2003). Thus, on the standard set forth by Supreme Court and Fourth Circuit precedent, Beacon Hill's contacts with Virginia are sufficiently substantial and sufficiently related to this action for Beacon Hill to be amenable to suit in Virginia for the events at issue in this case.

The final prong of the due process analysis asks whether exercise of jurisdiction is "constitutionally reasonable," Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 279 (4th Cir. 2009), such that it comports with fair play and substantial justice. Factors to consider in performing this analysis include:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in further substantive social policies.

Id. As noted above, Beacon Hill does not actually offer a substantive due process objection to jurisdiction aside from the

21

claim that its contacts with Virginia are not sufficiently related to this suit.  And consideration of the <u>Geometric</u> factors confirms that Beacon Hill has no plausible objection on these grounds.

Beacon Hill has not claimed any undue burden in litigating this case in Virginia, nor is there any doubt that Virginia has an interest in protecting its companies from what is alleged to be tortious interference by out of state actors.  It is similarly clear that Apex has an interest in having this case decided in Virginia, where it is headquartered, where Merriam was employed before she left for Beacon Hill, and where Merriam's and Scott's employment contracts dictate any legal action be decided.  In the absence of any plausible countervailing arguments from Beacon Hill, these considerations are more than adequate to find that Beacon Hill's due process rights are not violated by being hailed in a Virginia court.

## II. **Failure to State a Claim**

In addition to its jurisdictional argument, Beacon Hill also moves to have the Complaint dismissed under Fed. R. Civ. P. 12(b)(6) because, it argues, the Complaint does not meet the pleading standards set by <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).  In making this argument, Beacon Hill challenges the sufficiency of Apex's allegations as to each element of tortious interference.  Beacon Hill argues, in short, that the Apex employment contract was not

a valid contract to begin with; that Beacon Hill used no improper means in recruiting and hiring Merriam and Scott and had no knowledge of the relevant terms of their Apex contracts; and finally, that Apex cannot make the requisite showing of damages to bring this cause of action.

### 1. Enforceability of Apex's Confidentiality, Noncompetition, Nonsolicitation, and Nondisclosure Agreement

Beacon Hill begins by challenging the validity of every noncompete term in Merriam and Scott's employment contracts. Beacon Hill's arguments on this point are, without exception, very weak, to put it charitably.  Apex argues that the issue of the enforceability of these provisions cannot even be raised in a Rule 12(b)(6) motion, citing to the Supreme Court of Virginia's opinion in Assurance Data, Inc. v. Malyevac, 286 Va. 137 (2013) (holding that the enforceability of a restraint on competition in an employment contract could not be decided at the demurrer stage because "restraints on competition are neither enforceable nor unenforceable in a factual vacuum").  Beacon Hill argues that this is a state procedural rule that can be jettisoned when, as here, the opposing party attached the relevant agreement to the Complaint (ECF No. 1-1) and made the content of the agreement part of the substance of its arguments in its initial pleading, along with Sealed Exhibit 1 (which establishes that Merriam did not have Apex clients more than about 30 miles from the Falls Church office).

23

Apex is correct to argue, however, that Beacon Hill cannot, in a Rule 12 motion, rely on facts outside of the Complaint, even though documents attached to the Complaint can be considered.  To the extent that Beacon Hill relies in some places on facts that emerged in discovery, Beacon Hill's motion is no longer a motion to dismiss but a motion for summary judgment.  What is more, Beacon Hill's argument is unpersuasive because the factual information contained in the exhibit does not permit the Court to determine that the noncompete terms are unreasonable as a matter of law, the test to be applied under federal law. Neither party is especially careful about these points, however, and Beacon Hill's arguments can be dispensed with on their own terms, even though they are premature at this stage of the proceedings.

### a. Territorial Limitation

Beacon Hill's first challenge to the validity of the contract takes aim at the 50-mile territorial limitation.  Beacon Hill claims that the restriction is invalid because it is both ambiguous and overly broad.  Those arguments are extraordinarily strained.

The "Restricted Territory" provision of the Apex employment contract sets the boundaries within which the noncompete agreement applies.  It defines the area as:

> [A] fifty (50)-mile radius around any Apex office, including Employee's home office (if applicable), in which the Employee regularly worked . . . during the twenty-four (24) months immediately preceding the cessation of his employment.

24

ECF No. 1-1 at ¶ 1(i).  Beacon Hill first argues that the provision "is ambiguous because it can be read to prohibit employment within 50 miles of <u>any</u> Apex office, which includes the employee's home office."  ECF No. 41 at 12.  It beggars belief that Beacon Hill makes this argument.

The phrase "including Employee's home office (if applicable)" is offset by commas.  It is thus a nonlimiting modifying phrase that explains the antecedent, "any Apex office," without restricting it.[4]  The phrase "in which the employee regularly worked . . . ," which follows the nonlimiting "including" phrase, is a limiting phrase.  The limiting phrase indicates its meaning by its construction, which follows the standard rules of written English:  The word "which" is preceded by commas and the phrase as a whole is offset by commas.[5]  This construction makes abundantly clear that it is a limiting phrase that narrows the scope of the referent from all Apex offices to only those <u>in which</u> the employee regularly worked.  Beacon Hill offers nothing but an ipse dixit claim in support of the contention that the sentence as a whole is ambiguous to a competent reader of English.

---

[4] <u>See</u> <u>Chicago Manual of Style</u> at 6.50, "Commas with 'such as' and 'including'" (17th ed. 2017) ("Nonrestrictive phrases introduced by these terms are set off by commas (because they are not essential to the meaning or identity of the noun they modify).").
[5] <u>See</u> <u>Chicago Manual of Style</u> at 5.250, "that; which" (17th ed. 2017) ("<u>Which</u> is best used restrictively only when it is preceded by a preposition . . . Nonrestrictively, it is almost always preceded by a comma, a parenthesis, or a dash.").

Beacon Hill argues in the same section of its brief that the provision is further ambiguous because "home office" might be read as referring either to employees' work-from-home office or the main Apex office to which they were assigned.  This argument is slightly less strained because both readings are, in isolation, possible readings of the phrase.  But the argument nevertheless fails for two reasons.  First, because the second reading of the phrase (the main Apex office to which the employee is assigned) makes no pragmatic sense whatever.  It would be so obvious as to be not worth mentioning, even in a contract, that "any Apex office" includes the main office at which the employee worked.  (Put otherwise, it is hard to imagine how one could argue that "any office" does not include the main office at which the employee worked.)  By contrast, it is a sensible clarification to include in the contract that a work-from-home office falls within the meaning of "office."

But even if that argument were inadequate fully to resolve the issue, there remains the conclusive grammatical point that the putatively ambiguous phrase is a nonlimiting phrase (as shown above) and thus it is, by definition, not essential to the scope of application of the sentence as a whole.  There remains for Beacon Hill only the claim that an employment contract is void in its entirety if a single provision allows for even the smallest amount of ambiguity as to the meaning of any part of the contract.

Beacon Hill has not cited any authority that would support such a view.  Nor has the Court located any such authority.

Beacon Hill argues as well that the Restricted Territory provision is invalid because it is overbroad in prohibiting employment within the designated time frame at competitors within a 50-mile range.  But Beacon Hill does not cite to any authorities as to what sort of standard for overbreadth must be applied to employment contracts.  Instead, Beacon Hill merely reasons that 50 miles is greater than necessary because it extends further from the Apex Falls Church office than Apex has shown Merriam to have had contacts with clients.

Beacon Hill argues also that the provision is invalid because Apex uses the same 50-mile radius at all of its offices instead of modifying the exact radius of the noncompetition agreement to be closely tailored to the geographic scope of each office's clientele.[6]  But Beacon Hill cites no case law that establishes that the prohibition of overbreadth is as demanding as it suggest.  Indeed, it would be extraordinary if the standard were as stringent as Beacon Hill suggests it to be, particularly because, for a company like Apex, the exact geographic range of its client base presumably fluctuates quite frequently.

---

[6] This is but one example of the issue, mentioned above, of Beacon Hill's resorting to arguments that depend on factual points outside of the Complaint.  Thus, this is an argument that, even supposing it had merit, could only be made in a motion for summary judgment.

Beacon Hill's reasoning, if it were accepted, would suggest the need for still more stringent oversight of such contractual terms because there is no reason to suppose that Apex's Falls Church office maintains client contacts an equal distance in each direction (they assuredly have no clients 50 miles to the southeast in the center of the Chesapeake Bay). Beacon Hill's logic would thus seem to suggest that, rather than a radius extending in all directions, the clause would have to be narrowly tailored to extend only so far in each direction as Apex's current clientele is geographically distributed. But Beacon Hill has not cited to any authority suggesting the need for the kind of tailoring of noncompete terms that they claim to be necessary.

Beacon Hill also makes the stronger claim that Apex needed to present evidence that Merriam and Scott <u>personally</u> serviced clients to the full extent of the 50 mile radius. This claim adds to the previous claim what is essentially the restriction that companies may not employ standard noncompete terms in employment contracts but must instead, to avoid overbreadth, customize the exact restrictions for each employee. But Beacon Hill has not cited any authority that would support such a view. Nor has the Court located any such authority.

For the foregoing reasons, Beacon Hill's attack on the Restricted Territory provision is rejected.

### b. Restraint on Competition

Beacon Hill's argument on this point is likewise strained. The Apex contract restricts employment at competing businesses, which are defined as "any person, business, or subdivision of a business which provides products or services that are the same as or substantially similar to and competitive with, the Business of the Company . . . <u>excluding subdivisions of a business, if any, which do not primarily engage in the Business of the Company.</u>" ECF No. 1-1 at 2. A "competing position" is defined as a position at a competing business "that involves duties within the Restricted Territories that are the same as or substantially similar to the duties the Employee performed for the Company." Beacon Hill argues that this means that the contract "would preclude a former employee from working in <u>any capacity</u> for a competitor . . . ." ECF No. 41 at 13. But it is immediately evident from reading the contractual terms emphasized above that this is a mischaracterization of the noncompete provision because the language of the Apex contract explicitly disclaims any such restriction.

### c. Non-Recruitment Term

The non-recruitment term has no direct relevance to this suit but Beacon Hill challenges its validity anyway, hoping in doing so to show that the contract's purported overbreadth invalidates it in its entirety.

Apex's noncompete term prohibits "directly or indirectly, whether on Employee's own behalf or on behalf of any other person or entity, (i) solicit[ing] or induc[ing] any employee of the Company to terminate or lessen such employment . . . for the purpose of performing services for a Competing Business; or (ii) hir[ing] or caus[ing] to be hired, for any employment by a Competing Business, any person who was employed by the Company within the three (3) month period preceding the cessation of Employee's employment by the Company." ECF No. 1-1 at 3.

Beacon Hill cites a variety of inapplicable cases in arguing that this term is unenforceable. The first case cited, ManTech Int'l Corp. v. Analex Corp., 75 Va. Cir. 354 (Fairfax County 2008), concerns a non-recruitment term that is substantially broader (prohibiting recruitment of employees to do anything, as opposed to Apex's term, which merely prohibits recruitment from Apex to a direct competitor). The second case, Int'l Paper Co. v. Brooks, 63 Va. Cir. 494 (Roanoke City, 2003), concerns a provision that lasts in perpetuity, unlike the one at issue here.

Finally, as Apex notes, the remaining cases that Beacon Hill cites relate to non-competition terms and not to non-recruitment terms. In the absence of any argument as to why the one should be applicable to the other, these cases are not relevant to the point Beacon Hill is trying to establish.

A non-recruitment term does not implicate the same concerns as restraints that limit the kind of work that employees are permitted to do upon leaving their employment. It is, accordingly, less obvious why the Court should be concerned about a reasonable-seeming term clearly designed to prevent a departing employee from triggering an exodus of other Apex employees. Because Beacon Hill cannot cite to any case law that would indicate why this term is unenforceable--in particular, because it has no actual relevance to this case--this argument is also unsuccessful.

### d. Nondisclosure Term

Amid stiff competition, this is the most groundless of Beacon Hill's objections to the Apex contract's terms. Beacon Hill argues that the contract's definition of confidential information is overbroad and thus unenforceable. The basis for Beacon Hill's argument is that the provision refers to "present and prospective client and candidate lists or client and candidate information," which Beacon Hill alleges to be information that is often publicly known, or at least publicly available. ECF No. 41 at 15. But this is an egregiously cherry-picked quotation. The very same paragraph explicitly states that the restriction is limited to information that is (1) not generally known outside the company and (2) which employees learn in the course of their employment and (3) which would be beneficial to competitors. Beacon Hill's argument is thus, essentially, that the contractual term is invalid

because it admits of an unreasonable application--which purported application is expressly denied in the very paragraph being cited.

### e. Availability of Blue-Penciling

Finally, Beacon Hill argues that, if any of the overbreadth arguments succeed, the Apex employment agreement must be treated as invalid in its entirety because Virginia law does not allow blue-penciling invalid terms. Because the existence of a valid contract is an element of the cause of action in Apex's complaint, this argument, if successful, would threaten a sort of chain reaction: a finding that any one of the provisions was invalid as written would invalidate the rest of the contract as well, which would preclude the cause of action, which would effectively end the suit.

This issue is irrelevant because the Court finds both that the claim of overbreadth is premature at this stage of the litigation and that none of the provisions have been shown to be overbroad. But Apex also correctly points out that Virginia courts "recognize[ ] the difference between severing a clause ... and rewriting or 'blue penciling' a contract." GMS Indus. Supply, Inc. v. G & S Supply, LLC, 441 F. Supp. 3d 221, 227 (E.D. Va. 2020) (quoting Pitchford v. Oakwood Mobile Homes, Inc., 124 F. Supp. 2d 958, 965 (W.D. Va. 2000)). Thus, even if Beacon Hill were able to make a more persuasive showing that some term in the Apex contract is not valid, it would need further to show that Apex's cause of

action could not be sustained absent application of that provision to this case.

### 2. Improper Methods

Beacon Hill's argument on this point is a bit confusing. It argues that Apex "does not allege that Beacon Hill induced or caused a breach of any specific provision of either [employee's] agreement, much less used improper means to do so." ECF No. 41 at 17-18. Apex points to case law establishing that use of improper methods is not an element of a tortious interference claim where, as here, the allegedly tortious acts concern clauses (the noncompete provisions) that are not terminable at will. See Depuy Synthes Sales, Inc. v. Jones, 2:13cv392, 2014 U.S. Dist. Lexis 37727 at *13 (E.D. Va. Mar. 21, 2014).

Even were this not the case, Beacon Hill's claim would be hard to credit at this stage of the litigation because Apex has certainly alleged a number of ways in which Beacon Hill engaged in sharp dealing. See supra, FACTUAL BACKGROUND.

### 3. Damages

Finally, Beacon Hill argues that Apex's Complaint must be dismissed because Apex has not shown any evidence of damages adequate to satisfy the final element of a well-pleaded complaint alleging tortious interference. Beacon Hill emphasizes in its brief in support of the Motion and in its reply brief that Apex does not assert or show evidence of having already suffered

concrete harms as a result of Merriam's and Scott's alleged breaches of their employment contracts. But Beacon Hill has vanishingly little in the way of authority to support this demanding standard for what a plaintiff needs to show to satisfy the injury element of this cause of action at the pleading stage. Apex, in turn, cites to a recent District case denying a motion to dismiss on broadly similar facts. Update, Inc. v. Samilow, 311 F. Supp. 3d 784 (E.D. Va. 2018). In Samilow, the Court held:

> "Plaintiff has a legitimate business interest in imposing a reasonable non-compete clause to protect itself from losing potential work to competitors through employees who leave the company and then compete against [plaintiff] using the business sensitive knowledge and contacts they acquired as an employee."

Id. at 788 (internal quotation and citation omitted); see also Robert Half Int'l, Inc. v. Billingham, 315 F. Supp. 3d 419 (D.D.C. 2018) (granting a preliminary injunction against Beacon Hill in a suit for breach of contract and tortious interference with contract).

The precepts explained in Samilow and Robert Half stand to reason. To the extent that noncompete provisions are legitimate, it would be surprising if they could not be enforced until a plaintiff had suffered tangible and demonstrable harm. The injuries against which the terms serve to protect employers are of the kind that are not always easily quantifiable and where causation is difficult to prove. These may or may not be

surmountable impediments to Apex's successfully litigating this case on the merits, but Beacon Hill has not shown that Apex's Complaint fails the relevant pleading standards.

## III. Merriam and Scott's Argument

Merriam and Scott's Motion makes many of the same arguments as Beacon Hill's, though with the crucial differences that Merriam and Scott do not challenge whether they are subject to personal jurisdiction in this district.  Thus, the shared arguments as to the validity and enforceability of Apex's employment contract meet the same fate.  They fail.

Merriam and Scott do, however, make the additional argument that the arbitration clauses in their contracts are valid and enforceable, and that those clauses require that Apex's claims against them be brought in arbitration rather than in federal court.  Because Apex's only claim against the individual defendants is for injunctive relief, however, Merriam and Scott's argument that the arbitration clause's exception for injunctive relief is inapplicable is the only thing that remains to be addressed.

The parties agree that Merriam and Scott's employment contracts contain valid and enforceable dispute resolution agreements that mandate arbitration for employment-related disputes that would otherwise be litigated in court.  ECF No. 43-1, Ex. A.  The Agreement contains a section called "Excluded Claims."  Id. § 1.c.  That section includes among its exceptions

the clause that "either Party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that Party may be entitled may be rendered ineffectual without such provisional relief." Id.

Merriam and Scott argue that, because Apex is seeking remedies other than injunctive relief in addition to its motion for an injunction, the injunction exception does not apply and this dispute must be arbitrated. "Alternatively," they argue, the Court should "enter an order staying this litigation and compelling Apex to arbitrate its claim against Merriam and Scott in accordance with the Agreements." ECF No. 43 at 1-2.

Merriam and Scott's most substantive argument is that Apex conceded in a case filed in Henrico County Circuit Court that an arbitration provision identical to the one at issue here was applicable in a suit seeking an injunction, and that therefore Apex is functionally estopped from arguing that this case does not also require arbitration. ECF No. 43 at 6. Apex notes in response, however, that that case sought a permanent injunction against the employee, while this case moves only for a preliminary injunction, which is explicitly within the scope of the arbitration clause.

Merriam and Scott argue as well that this case should be stayed pending resolution of the other issues or that this case must be referred to arbitration because Apex asked for relief other

36

than a preliminary injunction.  But as Apex's complaint and later motion for a preliminary injunction indicate, the only relief sought against Merriam and Scott right now is injunctive relief, with the remaining claims for damages directed at Beacon Hill. Were Apex later to attempt to obtain other forms of relief against Merriam and Scott outside of the kind of arbitration dictated by their contracts, Merriam and Scott would then have grounds to petition the Court to send the case to arbitration.

Finally, on a more formalist note, Apex argues that an arbitration clause is, like the rest of the agreement, a contract that courts must enforce but that does not itself deprive a court of its jurisdiction.  Thus, the proper motion for Merriam and Scott to file here would seem to be a motion to compel arbitration and not a motion to dismiss for lack of jurisdiction.  ECF No. 56 at 5-6.  In either case, Merriam and Scott's motion does not succeeded in its argument and Apex's Complaint will not be dismissed.

## CONCLUSION

For the reasons stated above, the defendants' Motions will be denied.

It is so ORDERED.

_____  /s/  *REP*

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  December **3**, 2021